**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                             Case No.: 3:07-cv-631-J-34TEM

MICHAEL D. FERGUSON, KATHERINE S.
FERGUSON, HIRAM F. WASDIN, CAROL
E. WASDIN, and CAIN & BULTMAN, INC.,
a Florida corporation,

                Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Michael D. Ferguson's Amended

Verified Motion to Set Aside Final Summary Judgment of Foreclosure, Final Judgment, and

Decree of Foreclosure and Order of Sale (Doc. No. 86; Michael Motion); Defendant

Katherine S. Ferguson's Amended Verified Motion to Set Aside Final Summary Judgment

of Foreclosure, Final Judgment, and Decree of Foreclosure and Order of Sale (Doc. No. 87;

Katherine Motion); and Plaintiff's Opposition to Defendants' Motions to Set Aside Judgment

(Doc. No. 92; Response).

## I.    Background[1]

Plaintiff, United States of America, initiated this action against Defendants on July 13,

---

[1]As the Court has previously had occasion to discuss in detail the factual and procedural background of this litigation, see Order (Doc. No. 64; Summary Judgment Order); Order (Doc. No. 69; Order on Motion to Withdraw), here the Court provides a summary of only facts and procedural history relevant to a resolution of the pending motions.

2007, by filing the Complaint of the United States (Doc. No. 1).  On September 18, 2007, before effecting service of process on any Defendant, Plaintiff filed the Amended Complaint of the United States (Doc. No. 4).  Subsequently, Plaintiff filed returns of service reflecting that all Defendants had been served with process on October 3, 2007.  See Notice of Filing Returns of Service (Doc. No. 5) at 1-2.  Thereafter, Defendants Michael D. Ferguson (Mr. Ferguson) and Katherine S. Ferguson (Mrs. Ferguson) (collectively, the Fergusons) appeared and filed their Answer (Doc. No. 6; Answer)[2].  On January 15, 2009, Plaintiff filed the Second Amended Complaint of the United States (Doc. No. 26; Complaint), which is the operative Complaint in this matter.

On June 24, 2009, Plaintiff filed a motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure (Rule(s)), seeking to reduce to judgment the federal tax liabilities of the Fergusons, foreclose federal tax liens against certain of their real property (the Property), sell the Property, and apply the proceeds of the sale to the Fergusons' federal tax liabilities.  See Plaintiff's Motion for Summary Judgment (Doc. No. 46; Motion for Summary Judgment) at 1, 12-13.  After giving the Fergusons adequate time and multiple opportunities to respond to the Motion for Summary Judgment[3], the Court treated the Motion for Summary Judgment as unopposed and proceeded to the merits of Plaintiff's arguments. See generally Summary Judgment Order.  Based on the undisputed evidence adduced by Plaintiff, the Court determined that the tax liabilities in question were properly assessed

---

[2]The Court need not discuss the involvement of Defendants, Hiram F. Wasdin, Carol E. Wasdin (the Wasdins), and Cain & Bultman, Inc. (Cain), in this Order as they are not particularly relevant to the resolution of the Michael Motion or the Katherine Motion.  See Order on Motion to Withdraw at 2 n.2.

[3]See Summary Judgment Order at 3-4; Order on Motion to Withdraw at 2-3 (both Orders detailing the time and opportunities that the Fergusons had to respond to the Motion for Summary Judgment).

against the Fergusons, and granted summary judgment in Plaintiff's favor on February 24, 2010.  See id. at 9, 11-12.  Additionally, the Court ordered the Property to be foreclosed and sold, with the proceeds distributed in accordance with an agreement between Plaintiff and a party with an interest in the Property superior to Plaintiff's federal tax lien.[4]  See id. at 10, 12.  In accordance with the Court's ruling, the Clerk of the Court entered Judgment in a Civil Case on February 25, 2010.  See Judgment in a Civil Case (Doc. No. 65; Judgment); Judgment in a Civil Case (Doc. No. 66).

Subsequent to the entry of judgment against them, the Fergusons filed a Petition [to the] Court to Withdraw Summary Judgment (Doc. No. 67; Motion to Withdraw).  In the Motion to Withdraw, the Fergusons asserted that they should be allowed to defend this case and requested that the Court "[o]verturn the Summary Judgment granted to the Plaintiff." Motion to Withdraw at 1.  Plaintiff opposed the Motion to Withdraw.  See Plaintiff's Opposition to Defendant's [sic] Petition to Withdraw Summary Judgment (Doc. No. 69).  After determining that the Motion to Withdraw was governed by Rule 59(e), the Court found that the Fergusons failed to establish any of the three main grounds upon which they might have obtained reconsideration of the Court's Summary Judgment Order.  See Order on Motion to Withdraw at 5-7.  Accordingly, the Court denied the Motion to Withdraw.

On June 10, 2010, the Court entered a Decree of Foreclosure and Order of Sale (Doc. No. 70; Decree).  In the Decree, the Court ordered that the Property[5] "be sold under 28 U.S.C. §§ 2001 and 2002, to satisfy, in whole or in part, the federal tax liens against Michael

---

[4]Namely, Defendant Cain.  See Order on Motion to Withdraw at 2 n.2.

[5]The Property is known as 11677 Tangelo Lane, Jacksonville, Florida 32223-1733.  The more particular, legal description of the Property is set forth in the Decree.  See Decree at 1-2.

D. Ferguson and Katherine S. Ferguson for the 1993 through 1995, 1999, and 2001 through 2005 tax years[.]" Decree at 2.  Additionally, the Court identified the timeframes, terms, and conditions which were to govern the sale of the Property.  See id. at 2-7.

On November 23, 2010, over five months after entry of the Decree, the Fergusons filed an untitled motion (Doc. No. 74; Untitled Motion) in which they asked "for a temporary stay on the [Decree]."  Untitled Motion at 1.  Specifically, the Fergusons requested that the Court postpone the sale of the Property for an additional thirty days.  See id.  Plaintiff opposed the relief sought by the Fergusons.  See generally Plaintiff's Opposition to Defendants' Motion for Temporary Stay (Doc. No. 75).  Upon review, the Court denied the Untitled Motion.  See Order (Doc. No. 76; December Order).  In doing so, the Court found that the Fergusons  presented no meritorious argument or good cause which would warrant further delay in the sale of the Property.  See December Order at 2.  Moreover, the Court observed that the Fergusons had already been afforded ample time to vacate the Property[6]. See id.

On December 20, 2010, Plaintiff filed the United States' Unopposed Motion to Appoint a Receiver/Liquidator (Doc. No. 77; Motion for Receiver).  In the Motion for Receiver, Plaintiff represented that, due to staffing shortages, "the Internal Revenue Service will not be able to offer the Property for sale for at least six months[.]" Motion for Receiver at 3.  Accordingly, Plaintiff requested that the Court appoint George Richards of National Auction Company as a receiver and liquidating agent to sell the Property.  Id.  As the Fergusons consented to the

---

[6]Pursuant to the terms of the Decree, the Fergusons should have vacated the Property no later than July 11, 2010.  See Decree at 5; December Order at 2.

relief sought in the Motion for Receiver, <u>see</u> <u>id.</u> at 1 n.1, the Court granted the Motion for Receiver and appointed George Richards of National Auction Company as the "authorized Receiver and Liquidating Agent to marshal and sell assets belonging to Defendants, Michael D. Ferguson and Katherine S. Ferguson, consisting of real property located at 11677 Tangelo Lane, Jacksonville, Florida 32223-1733 in Duval County, Florida[.]" <u>See</u> Order (Doc. No. 78; Receiver Order) at 2.

Subsequent to the entry of the Receiver Order, Mr. Ferguson, represented by counsel[7], filed the Michael Motion. On February 28, 2011, the same day that Mr. Ferguson filed the Michael Motion, Mrs. Ferguson, proceeding <u>pro</u> <u>se</u>, filed the Katherine Motion. In their respective Motions, the Fergusons seek identical relief pursuant to Rule 60(b). Specifically, both Mr. Ferguson and Mrs. Ferguson request that "the Court [] set aside the Final Summary Judgment of Foreclosure (Doc. No. 64) entered in this action on February 24, 2010, the Final Judgment (Doc. No. 65) entered in this action on February 25, 2010, and the Decree of Foreclosure and Order of Sale (Doc. No. 70) entered in this action on June 10, 2010[.]" Michael Motion at 1; Katherine Motion at 1. Plaintiff filed its consolidated Response in opposition to the Michael Motion and the Katherine Motion on March 23, 2011. Accordingly, both the Michael Motion and the Katherine Motion are ripe for review.

**II.     Applicable Law**

Federal Rule 60(b) provides,

---

[7]On February 21, 2011, attorneys Keith H. Johnson and Adam L. Heiden of the law firm Johnson & Johnson, P.A. filed an Entry of Appearance (Doc. No. 79) on behalf of Mr. Ferguson. Prior to this date, the Fergusons had been proceeding <u>pro</u> <u>se</u>.

> [o]n motion and just terms, the court may relieve a party or its
> legal representative from a final judgment, order, or proceeding
> for the following reasons: (1) mistake, inadvertence, surprise,
> or excusable neglect; (2) newly discovered evidence that, with
> reasonable diligence could not have been discovered in time
> to move for a new trial . . .; (3) fraud . . .,misrepresentation, or
> misconduct of an opposing party; (4) the judgment is void; (5)
> the judgment has been satisfied, released, or discharged . . .;
> or (6) any other reason that justifies relief.

Rule 60(b).[8]  Rule 60(b) empowers the district courts "'to vacate judgments whenever such

action is appropriate to accomplish justice.'" Griffin v. Swim-Tech Corp., 722 F.2d 677, 680

(11th Cir. 1984) (quoting Klapprott v. United States, 335 U.S. 601, 615 (1949)).  While the

trial court is vested with substantial discretion in granting relief under Rule 60(b), see

Abimbola v. Broward Cnty., 266 Fed. App'x 908, 910 (11th Cir. 2008) (quoting Am. Bankers

Ins. Co. of Fla. v. Nw. Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999)), "[t]he desirability

for order and predictability in the judicial process speaks for caution in the reopening of

judgments."  Griffin, 722 F.2d at 680 (citation omitted).  Accordingly, Rule 60(b) "seeks to

strike a delicate balance between two countervailing impulses: the desire to preserve the

finality of judgments and the 'incessant command of the court's conscience that justice be

done in light of all the facts.'"  Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir. Unit

A Jan. 26, 1981) (quoting Bankers Mortg. Co. v. United States, 423 F.2d 73, 77 (5th Cir.

1970)).[9]  With this goal in mind, "it is often said that the rule should be liberally construed in

---

[8]Under provision (c)(1) of Rule 60, "[a] motion under Rule 60(b) must be made within a reasonable time
- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the
proceeding."  Rule 60(c)(1).

[9]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit
adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of
business on September 30, 1981.

order to do substantial justice." Id.  Thus, "although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." Id.

## III.   Discussion

### A.)  The Michael Motion

In the Michael Motion, Mr. Ferguson requests that the Court set aside the Summary Judgment Order, the Judgment, and the Decree.  Michael Motion at 1.  Mr. Ferguson contends that he is entitled to such relief under Rule 60(b)(1) because of "surprise, or excusable neglect." Id. at 2.  Additionally, Mr. Ferguson asserts that such relief is warranted under Rule 60(b)(3) because of fraud, misrepresentation, or misconduct.  Id.

The crux of Mr. Ferguson's Rule 60(b)(1) "surprise, or excusable neglect" argument is that, until recently, he was completely unaware of the Fergusons' tax and legal issues. In an affidavit (Doc. No. 86-1; Michael Affidavit) filed in support of the Michael Motion, Mr. Ferguson asserts that it was not until February 4, 2011, that he learned of the Fergusons' "tax and legal problems" and that his "house was to be sold."  Michael Affidavit at 1-2.  Mr. Ferguson credits his lack of knowledge regarding the Fergusons' tax and legal matters to the fact that Mrs. Ferguson "left [him] completely in the dark about [the Fergusons'] tax issues and problems for the past eighteen (18) years and this foreclosure case for the past three and a half (3 ½) years." Id. at 2.  Mr. Ferguson also offers affidavit testimony from Mrs. Ferguson to support his assertions that he was unaware of the couple's ongoing tax and legal issues.  See generally Affidavit of Katherine S. Ferguson in Support of Motion to Set

Aside Final Summary Judgment of Foreclosure, Final Judgment, and Decree of Foreclosure and Order of Sale (Doc. No. 86-2; Katherine Affidavit).  In her affidavit, Mrs. Ferguson reveals that she "decided to exclude [Mr. Ferguson] from any dealings and involvement with certain Internal Revenue Service matters in the 1990s" and neglected to inform Mr. Ferguson that "this Federal tax case to reduce the tax liabilities to Judgment and foreclose against [the Fergusons'] homestead property was filed."  See Katherine Affidavit at 2.  Because Mr. Ferguson claims to have been "completely in the dark", he maintains that, upon learning of the Fergusons' significant tax liabilities[10] and the existence of this litigation, he was considerably surprised.  See generally Michael Motion; Michael Affidavit.  Additionally, Mr. Ferguson avers that, because he lacked "knowledge of IRS matters and this lawsuit," his failure to litigate this case more vigorously is a product of excusable neglect.  See generally Michael Motion; Michael Affidavit.  Accordingly, Mr. Ferguson contends that, under the circumstances of this case, he should be entitled to relief from the Summary Judgment Order, the Judgment, and the Decree pursuant to Rule 60(b)(1).

    In addition to arguing that the Summary Judgment Order, the Judgment, and the Decree should be set aside under Rule 60(b)(1), Mr. Ferguson contends that he is entitled to the requested relief under Rule 60(b)(3) because of "intrinsic fraud, 'misrepresentation, or misconduct[.]'" Michael Motion at 2.  Specifically, Mr. Ferguson alleges that "throughout the pendency of this legal proceeding" he has been "subjected to misconduct, misrepresentation, and/or intrinsic fraud on the part of [Mrs. Ferguson.]" Id. at 3.  Mr. Ferguson avers that Mrs. Ferguson's fraud, misrepresentation, and misconduct includes, but

---

[10]As of July 28, 2008, the combined amount of the Fergusons' individual and joint tax liabilities exceeded $1,000,000.  See Summary Judgment Order at 5 n.8; Judgment.

is not limited to, the fraudulent preparation and submission of federal tax returns, the forging of Mr. Ferguson's signature on multiple court filings, and the failure to share with Mr. Ferguson "the Complaint or the other Court paperwork which was served upon her."  <u>See</u> <u>generally</u> Michael Affidavit.  Due to Mrs. Ferguson's alleged fraud, misrepresentation, and misconduct, Mr. Ferguson contends that the previous, relevant pleadings in this case should be set aside and that he should be allowed to defend against Plaintiff's claims anew.  <u>See</u> <u>generally</u> Michael Motion.

Plaintiff opposes the Michael Motion.  <u>See</u> <u>generally</u> Response.  With respect to Mr. Ferguson's invocation of surprise and excusable neglect under Rule 60(b)(1), Plaintiff "respectfully submits that [Mr. Ferguson] has not demonstrated a plausible factual basis for 'surprise' . . . or the equitable factors ordinarily considered to relieve a litigant from a judgment for excusable neglect."  <u>Id.</u> at 11-12.  As to Mr. Ferguson's request for relief pursuant to Rule 60(b)(3), Plaintiff contends that such request for relief must fail because Mrs. Ferguson is not an "opposing party", and Mr. Ferguson has made no allegation "that the United States committed an act of fraud or misconduct in any part of the litigation."  <u>Id.</u> at 9.  Upon review of the Michael Motion and the Response, the Court determines that the Michael Motion is due to be denied.

Mr. Ferguson seeks relief from the Summary Judgment Order, the Judgment, and the Decree under Rule 60(b)(1)'s surprise and excusable neglect prongs.  The Court first analyzes whether Mr. Ferguson's failure to more vigorously defend this case is attributable to excusable neglect.  Rule 60(b)(1) provides that the Court may relieve a party from a final judgment, order, or proceeding for reasons of "mistake, inadvertence, surprise, or excusable

neglect." Rule 60(b)(1).  For purposes of Rule 60(b), "excusable neglect" is "understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."  United States v. Davenport, 668 F.3d 1316, 1324 (11th Cir. 2012) (internal quotations omitted).  The determination of whether a party's neglect may be excused is an equitable decision turning on "'all relevant circumstances surrounding the party's omission.'" Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (quoting Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship, 507 U.S. 380, 395 (1993)).  In determining whether a party's neglect is excusable, the Court must consider the danger of prejudice to the opposing party; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith.  See Pioneer, 507 U.S. at 395; Davenport, 668 F.3d at 1324; Cheney, 71 F.3d at 850.  Here, Mr. Ferguson contends that his failure to comply with Court deadlines or otherwise defend this case is excusable "based upon his lack of knowledge of IRS matters and this lawsuit."  Michael Motion at 2.  However, upon consideration of the Pioneer factors and reviewing all of the relevant circumstances of this case, the Court disagrees.

With regard to the first factor, the Court finds that there is a danger of real prejudice to Plaintiff should Mr. Ferguson be allowed to re-litigate this tax liability case.  Plaintiff, who has already once litigated this case to Judgment would undoubtedly be forced to expend additional resources if it was required to litigate its tax liability claims a second time.  More importantly, however, there also exists the danger that during the additional time required to re-litigate this matter, the Property, that is the lone, substantial asset available to satisfy

a portion of the amount owed to Plaintiff, could be damaged, destroyed, or subjected to depreciation in market value.[11] These scenarios could compromise Plaintiff's ability to collect the tax liabilities it is owed and, thereby significantly prejudice Plaintiff.  Thus, the first factor weighs in Plaintiff's favor.

As to the second factor, the length of the delay and its potential impact on judicial proceedings, the Court determines that it also weighs in favor of Plaintiff.  The Court observes that this litigation, which pertains to the Fergusons' tax liabilities– some of which date back almost twenty years– was initiated more than seven years ago, a very significant amount of time in the Court's estimation.  Additionally, the Summary Judgment Order, the Judgment, and the Decree from which Mr. Ferguson now seeks relief were entered over a year before the filing of the Michael Motion.  To grant Mr. Ferguson another opportunity to defend this case at this late stage would unnecessarily prolong these judicial proceedings and generate significant delays in the resolution of this already drawn out tax litigation.  Moreover, granting Mr. Ferguson the relief he seeks would compromise the order, predictability, and finality that are desirable in the judicial process.  Thus, the Court finds that, like the first factor, this factor also weighs against a finding of excusable neglect.

---

[11]The Court notes that it previously directed the Fergusons to take reasonable steps to preserve the Property, prohibited the Fergusons and others from committing waste against the Property, and forbade the Fergusons from taking any action that could tend to adversely affect the value of the Property.  See Decree at 4-5.  However, as the Fergusons have demonstrated non-compliance towards at least one other mandate contained in the Decree, as well as other directives in previously issued orders, the Court recognizes a danger of prejudice to Plaintiff in the event that the Fergusons or others take actions or engage in conduct resulting in damage or destruction to the Property during the timeframe that this matter is re-litigated.  Moreover, even if the Fergusons, others, or acts of nature do not damage or destroy the Property while this matter is re-litigated, there is a danger of prejudice to Plaintiff in the event that the Property depreciates in market value– a circumstance that even Mr. Ferguson recognizes as a possibility.  See Defendant's Motion to Stay Proceedings (Doc. No. 93; Motion to Stay) at 3 (acknowledging a downward trend of property values in this economic market).

With respect to the third factor– the reason for the delay, including whether it was within the reasonable control of the movant– the Court determines that it too weighs against Mr. Ferguson.  The sole reason advanced by Mr. Ferguson to excuse his failure to defend this action is that he allegedly lacked notice of this lawsuit, and therefore, had no control over how the case proceeded.  However, upon review of the record and for the reasons discussed below, the Court is strained to find plausibility in Mr. Ferguson's contentions that he was "completely in the dark" regarding the existence of the Fergusons' outstanding tax liabilities and this litigation.  Therefore, the Court does not find that Mr. Ferguson's proffered reason for delay merits a finding of excusable neglect.

### 1.) The Tax Liabilities

Mr. Ferguson maintains that, at all relevant times, he was "completely in the dark about [the Fergusons'] tax issues and problems" because Mrs. Ferguson hid the existence of the "IRS audit, assessments, and collection action from him."  See Michael Affidavit at 2; Michael Motion at 2.  Notwithstanding Mrs. Ferguson's allegedly nefarious conduct and Mr. Ferguson's allegations that "[u]ntil recently, [he] was not aware that he had an Internal Revenue Service ('IRS') tax problem", the Court finds evidence in the record which suggests that well before the filing of the Michael Motion, Mr. Ferguson had or should have had knowledge that the Fergusons were indebted to the IRS.

With regard to several of the tax years in question, Mr. Ferguson asserts that he "did sign some or many of [the Fergusons' joint tax] returns."  Michael Affidavit at 3.  Thus, by his own testimony, Mr. Ferguson acknowledges that he signed and filed joint tax returns, and

therefore, should have been aware of the Fergusons' tax obligations for many of the years in question.  Additionally, Mr. Ferguson avers that,

> With respect to the liabilities owed for some of the later year returns filed, it was my understanding or impression that my wife would pay those debts, including any penalty, interest, or other late charges, and I never gave any further thought to it. I was working those years, and we had sufficient money to liquidate some of those smaller liabilities.

Id. at 4.  Such testimony demonstrates that prior to the initiation of this lawsuit and during several of the tax years in question, Mr. Ferguson was aware that the Fergusons had an obligation to satisfy outstanding tax liabilities "including any penalty, interest, or other late charges[.]"  Id.  That Mr. Ferguson chose to take no action to inquire into such liabilities or assure himself that such liabilities were paid does not support a finding of excusable neglect.  See Valpak Direct Mktg. Sys., Inc. v. Hyde, No. 8:06-cv-347-T-26EAJ, 2006 WL 1982877, at *2 (M.D. Fla. July 13, 2006) ("Rule 60(b)(1) was not intended to relieve a litigant from the consequences of . . . a conscious decision, however unwise the decision may appear in retrospect.") (quoting Parrilla-Lopez v. United States, 841 F.2d 16, 20 (1st Cir. 1988)).  Additionally, the record reflects that because of the Fergusons' failure to pay their tax liabilities, the IRS recorded and filed numerous Notices of Federal Tax Liens against the Fergusons prior to and throughout the course of this litigation.  See Summary Judgment Order at 6 n.9 (detailing the recording information pertaining to the Notices of Federal Tax Liens).  Because the Notices of Federal Tax Liens were properly filed and recorded in the public records of Duval County, Florida pursuant to 26 U.S.C. § 6323(f), they were valid against and provided notice of the IRS's liens on the Property to any purchaser, holder of a security interest, mechanic's lienor, and judgment lien creditor.  As the Notices of Federal

Tax Liens were sufficient to provide notice to these entities, the Court reasons that the Notices of Federal Tax Liens similarly provided, at a minimum, some degree of constructive notice to Mr. Ferguson, an owner of the Property, of the existence of outstanding IRS tax liabilities.  Accordingly, the Court is disinclined to accept Mr. Ferguson's allegations and testimony that he was completely unaware of the Fergusons' tax liabilities until February 2011.

### 2.) The Lawsuit

With respect to the instant federal court action against him, Mr. Ferguson contends that his failure to meet court deadlines or otherwise defend against Plaintiff's claims is excusable because he "was never personally served," and therefore was without notice of this case until after the Summary Judgment Order, the Judgment, and the Decree were entered.   Additionally, Mr. Ferguson asserts that his neglect in this case is excusable because Mrs. Ferguson "hid the existence of this lawsuit . . . from him."  Michael Motion at 2. Indeed, in the Michael Affidavit, Mr. Ferguson testifies that Mrs. Ferguson "never showed [him] the Complaint or the other Court paperwork which was served upon her" and that he was not "made aware from any of the other Defendants or third parties that the legal proceeding was pending."   Michael Affidavit at 3.  His testimony is supported by Mrs. Ferguson's testimony that she never brought this federal tax case to Mr. Ferguson's attention.  See generally Katherine Affidavit.  However, as discussed below, the Court is unpersuaded by Mr. Ferguson's assertions that he did not have notice of this litigation.

Mr. Ferguson contends that he knew nothing of this lawsuit because he was never personally served with process.  The Court observes that personal, in-hand service upon Mr.

-14-

Ferguson was not necessary to provide Mr. Ferguson with adequate notice of this federal litigation.  Pursuant to Rule 4(e)(2)(B), "an individual . . . may be served in a judicial district of the United States by: . . . leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."[12]  The record in this case reveals, and Mr. Ferguson does not dispute, that on October 3, 2007, Revenue Officer Shane Allen left copies of the summons and complaint at Mr. Ferguson's "dwelling house or usual place of abode" with Mrs. Ferguson[13], a person of suitable age and discretion then residing therein[14].  See Doc. No. 5, Ex. B; Michael Motion at 1; Michael Affidavit at 3.  Because Plaintiff employed a method of service upon Mr. Ferguson which is entirely consistent with the procedures set forth in Rule 4(e)(2)(B) for effectuating service on an individual, the Court finds that Mr. Ferguson was properly served, and therefore properly notified of Plaintiff's suit against him.  Moreover, even if the Court were to believe Mr. Ferguson's testimony that Mrs. Ferguson never provided him with the process she received, the Court concludes that there is ample objective evidence in the record to support a finding that Mr. Ferguson had notice of this litigation.

---

[12]Although there are limited exceptions to Rule 4(e), Mr. Ferguson does not suggest that any of them apply.

[13]On the Return of Service, Revenue Officer Shane Allen indicates that he left the summons and complaint with "Catherine" Ferguson, as opposed to "Katherine" Ferguson.  See Doc. No. 5, Ex. B.  This appears to be a scrivener's error as Mr. Ferguson repeatedly acknowledges that his wife, i.e. Katherine Ferguson, accepted service on his behalf and does not contend that an individual other than his wife accepted service on his behalf.  See Michael Motion at 1; Michael Affidavit at 3.

[14]Mr. Ferguson makes no argument that, at the time of service, Mrs. Ferguson was not of suitable age or discretion.

A review of the docket reveals that several of the Fergusons' filings bear the signature of or are purportedly filed by or on behalf of Mr. Ferguson.  See Doc. Nos. 6, 27, 51, 57, 67, 74.  Further docket review shows that, at all times prior to February 2011, the Fergusons were proceeding pro se.  Due to the Fergusons' pro se status, the Clerk of the Court mailed both Mr. and Mrs. Ferguson copies of every order issued by the Court in connection with this case.  Additionally, a review of the certificates of service attached to all of Plaintiff's filings reveals that Plaintiff mailed, and in some cases also FedExed[15], copies of its court filings to the Fergusons at the Property.  Thus, prior to the filing of the Michael Motion and the Katherine Motion, the Clerk's office and Plaintiff sent over sixty pieces of court-related mail to the Fergusons.[16]  Separate and apart from this high volume of postal, case-related correspondence, counsel for Plaintiff represents that over the course of this case, a representative of the government "spoke with a party who represented himself to be Michael D. Ferguson[,] . . . regularly left voicemail messages on the Fergusons' home telephone number, . . . and communicated with Michael Ferguson by e-mail[17]."  Response at 6.   The Court finds little believability in Mr. Ferguson's argument that, notwithstanding these numerous court and case-related communications, he managed to remain unaware of the pendency of this case.  Indeed, in order to believe Mr. Ferguson's assertions that he was

---

[15]See Doc. Nos. 54, 61.

[16]This figure may be over 120 pieces if the copies of Court orders and Plaintiff's filings were, as the docket and certificates of service suggest, mailed to both Mr. and Mrs. Ferguson individually.

[17]Plaintiff's counsel has attached numerous e-mail exchanges to the Response.  See Response, Ex. A.   The e-mails reflect correspondence between Plaintiff's counsel and the e-mail address of michaeldferguson@bellsouth.net (Bell South Address).  Several of the messages sent to the Bell South Address which elicited responses were directed to Mr. Ferguson and multiple messages from the Bell South Address to Plaintiff's counsel were identified as being from Mr. Ferguson.

unaware of this litigation, the Court would have to believe that Mrs. Ferguson successfully intercepted, deleted, disposed of, or otherwise declined to share with Mr. Ferguson every written, telephonic, or electronic correspondence and communication regarding this litigation for a period of four years; that Mrs. Ferguson forged Mr. Ferguson's signature on multiple documents; that the other Defendants in this action, i.e. the Wasdins and Cain, with whom the Fergusons maintained, at a minimum, a debtor-creditor relationship, never alerted Mr. Ferguson to the existence of this lawsuit; that Mrs. Ferguson either posed as Mr. Ferguson in telephone conversations with Plaintiff's counsel or obtained the services of another individual to do so; and that Mrs. Ferguson either created a fictitious e-mail account to communicate with Plaintiff's counsel under Mr. Ferguson's name or used Mr. Ferguson's own e-mail account, totally unbeknownst to him, to communicate with Plaintiff's counsel. The Court is strained to find plausibility in such a fact pattern.

Moreover, the Court is hard pressed to understand why Mrs. Ferguson would bother, or feel the need, to impersonate or communicate as Mr. Ferguson if, as Mr. Ferguson alleges, she had been tasked with handling the Fergusons' "household financial and personal issues." Michael Affidavit at 4.  Nonetheless, even if Mrs. Ferguson engaged in such untoward behavior, Mr. Ferguson cannot now escape, under the guise of excusable neglect, the adverse consequences of the Fergusons' decision to delegate to Mrs. Ferguson unbridled responsibility for the couple's affairs. See Valpak Direct Mktg. Sys., Inc., 2006 WL 1982877, at *2.  Indeed, to allow Mr. Ferguson to distance himself from or avoid the consequences of his decision to delegate personal and financial matters to Mrs. Ferguson would sanction his self-induced ignorance.

Although the Fergusons offer subjective affidavit testimony to support Mr. Ferguson's position that he lacked notice of this lawsuit, the Court finds such testimony incredible, motivated by the Fergusons' desire to avoid the negative consequences associated with their failure to satisfy their tax liabilities, and outweighed and conflicted by other, objective evidence in the record which suggests that Mr. Ferguson had notice of the Fergusons' tax obligations and this litigation.  Because the Court determines that Mr. Ferguson's proffered reason for delay, i.e. that he lacked notice of this lawsuit, is shrouded in implausibility, the Court finds that such reason fails to support a finding of excusable neglect.

Finally, the Court turns to the fourth factor– whether Mr. Ferguson has acted in good faith.  In light of the procedural history and posture of this case, the Court is skeptical of the timing of[18] and motives behind Mr. Ferguson's filing of the Michael Motion.  Indeed, as set forth above, the Court discredits the veracity of numerous allegations contained in the Michael Motion and significant portions of the testimony contained in the Michael Affidavit. Although Mr. Ferguson's motivation to file the Michael Motion when he did likely arose out of a desire to retain the Property, as opposed to malice towards Plaintiff or the Court, the Court nonetheless concludes that Mr. Ferguson has failed to demonstrate that his actions have been undertaken in good faith.  Accordingly, the Court finds that this final factor, like

---

[18]As noted supra, pursuant to Rule 60(c)(1), a motion seeking relief under Rule 60(b)(1) or 60(b)(3) must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Rule 60(c)(1).  In this case, the Court entered the Summary Judgment Order on February 24, 2010.  The Clerk entered the Judgment on February 25, 2010.  The Michael Motion is dated February 25, 2011.  Thus, although the Michael Motion was timely filed, it was filed at the latest permissible moment.  Under the circumstances of this case, the timing of the Michael Motion does not appear to be coincidental.  Rather, the timing of the Michael Motion suggests that Mr. Ferguson filed the motion as a dilatory tactic designed to further prolong this case and, thereby delay the sale of the Property.

the others, weighs against Mr. Ferguson and, therefore, against a finding of excusable neglect.

Having considered the relevant circumstances surrounding this case, the allegations of the Michael Motion, and the testimony in the Michael and Katherine Affidavits and having analyzed the four <u>Pioneer</u> factors, and found them to weigh in favor of Plaintiff and against Mr. Ferguson, the Court concludes that Mr. Ferguson has failed to demonstrate excusable neglect. Thus, the Court finds that Mr. Ferguson's request for relief under the excusable neglect prong of Rule 60(b)(1) is due to be denied. Additionally, for the reasons discussed in the Court's analysis of the third <u>Pioneer</u> factor, the Court is of the opinion that Mr. Ferguson had or should have had knowledge of the existence of both the Fergusons' IRS tax liabilities and this federal litigation. Thus, the Court does not identify any "surprise" warranting relief under Rule 60(b)(1). Because Mr. Ferguson has established neither excusable neglect nor surprise, the Court determines that the Michael Motion is due to be denied to the extent that it seeks relief under Rule 60(b)(1).[19]

To the extent that Mr. Ferguson requests relief under Rule 60(b)(3), the Court determines that such request is also due to be denied. Rule 60(b)(3) provides that a party may obtain relief from a judgment or order when there is evidence of "fraud . . . , misrepresentation, or misconduct <u>by an opposing party</u>." Rule 60(b)(3) (emphasis added). In the Michael Motion and the attached Michael Affidavit, Mr. Ferguson makes no allegation that any fraud, misrepresentation, or misconduct on the part of Plaintiff placed him in his current predicament. Rather, Mr. Ferguson attributes his plight to a prolonged pattern of

---

[19]The Court notes that Mr. Ferguson advances no argument for, and the Court finds no basis to grant, relief under the mistake or inadvertence prongs of Rule 60(b)(1).

misconduct, misrepresentation, and fraud on the part of Mrs. Ferguson, his wife and fellow Defendant in this action.  See Michael Motion at 2,3; see generally Michael Affidavit. Interestingly, Mr. Ferguson asserts that even though Mrs. Ferguson is "nominally named a defendant [in this action], [she] has been working in opposition to [Mr.] Ferguson's best interests, and thereby can be fairly characterized as an opposing party[.]" Michael Motion at 2.  The Court finds no merit in this argument.  Indeed, it is Mrs. Ferguson's status as a joint obligor on the tax indebtedness and a joint owner of the Property that makes her a Defendant in this action.  Moreover, Mr. Ferguson has not provided the Court with any legal authority in support of his argument that his wife, a fellow Defendant and joint owner of the property at risk, should be treated as an "opposing party" for purposes of Rule 60(b)(3). Accordingly, the Court finds that Mr. Ferguson has failed to identify any fraud, misrepresentation, or misconduct on the part of an opposing party which warrants relief pursuant to Rule 60(b)(3).

In the Michael Motion, Mr. Ferguson prays for relief pursuant to Rule 60(b)(1) and Rule 60(b)(3).  However, for the reasons set forth above, the Court finds that Mr. Ferguson is not entitled to relief under either subsection of Rule 60.  Accordingly, the Court concludes that the Michael Motion is due to be denied.

### B.) The Katherine Motion

In the Katherine Motion, Mrs. Ferguson asserts that she "committed misrepresentation by misleading the Court and government counsel, and by omission by failing to disclose to [Mr. Ferguson] that he had Internal Revenue Service problems or that this case was pending." Katherine Motion at 1.  Additionally, Mrs. Ferguson avers that she

"committed a fraud on [her] husband by failing to disclose to him his tax problems . . . and the filing of this Federal District Court action." Id. at 2.  Nevertheless, Mrs. Ferguson boldly requests that the Court "set aside" the Summary Judgment Order, the Judgment, and the Decree. Id. at 1.  Additionally, Mrs. Ferguson requests that, to the extent the Court grants any relief to Mr. Ferguson from the Summary Judgment Order, the Judgment, or the Decree, the Court provide equal relief to her "as his Wife, notwithstanding [her] own actions." Id. at 2.

Plaintiff opposes the Katherine Motion. See generally Response.  Plaintiff contends that Mrs. Ferguson's own alleged fraud, misconduct, or misrepresentation cannot provide a basis for relief under Rule 60(b)(3). See Response at 9-10.  Additionally, Plaintiff asserts that Mrs. Ferguson should be denied relief under Rule 60(b)(1) because she "cannot seriously maintain that she has been . . . surprised by the events in this case." Id. at 10. Plaintiff also argues that Mrs. Ferguson's pattern of "deliberate or willful conduct cannot constitute excusable neglect" under Rule 60(b)(1). Id.  Finally, Plaintiff contends that "[e]ven if the Court determines that the judgment as to [Mr. Ferguson] should be set aside, the United States should still be allowed to foreclose its liens against, and sell, the [Property] to satisfy [Mrs. Ferguson's] federal income tax liabilities from the sale of her one-half interest in the [Property]." Id. at 12.  Upon review, the Court finds that the Katherine Motion is due to be denied.

Mrs. Ferguson is not entitled to relief under Rule 60(b)(3).  As noted supra, Rule 60(b)(3) provides that a party may obtain relief from a judgment or order when there is "fraud . . . , misrepresentation, or misconduct by an opposing party." Rule 60(b)(3) (emphasis

added).   Thus, pursuant to the express language of Rule 60(b)(3), a party cannot obtain relief from a judgment or order due to the party's own fraud, misrepresentation, or misconduct.   In the Katherine Motion, Mrs. Ferguson does not assert any fraud, misrepresentation, or misconduct by the opposing party, i.e. Plaintiff.   Indeed, the only fraud, misrepresentation, and misconduct alleged in the Katherine Motion is that of Mrs. Ferguson herself.   Accordingly, the Court finds no basis to set aside the Summary Judgment Order, the Judgment, or the Decree as to Mrs. Ferguson or  provide her any other relief under Rule 60(b)(3).

The Court similarly declines to grant Mrs. Ferguson any relief under Rule 60(b)(1)'s surprise or excusable neglect prongs.   The Court's review of the record reveals that Mrs. Ferguson was aware of the Fergusons' tax-related IRS issues prior to and during this litigation, see Katherine Affidavit at 2; that Mrs. Ferguson had communications and dealings with IRS representatives prior to and during this litigation, see id. at 2, 4; that Mrs. Ferguson "hire[d] various tax relief organizations to assist [her] in dealing with the IRS and handling [the Fergusons'] IRS problem", see id. at 4;  that Mrs. Ferguson was properly alerted to this litigation through personal service of a summons and complaint upon her at the Property on October 3, 2007, see Doc. No. 5, Ex. A; and that Mrs. Ferguson signed and filed "documents . . . in the Federal District Court action[20]," see Katherine Affidavit at 3.   Thus, the Court determines that Mrs. Ferguson was aware of the Fergusons' ongoing tax issues; that Mrs. Ferguson knew of this litigation seeking to reduce to judgment the Fergusons' federal tax liabilities, foreclose federal tax liens against the Property, and sell the Property; that Mrs.

---

[20] These documents include the Answer, the Case Management Report (Doc. No. 27), and the Motion to Postpone Judgment (Doc. No. 51; First Motion to Postpone).

Ferguson took some action, albeit ineffective, to engage outside entities for purposes of negotiating or reducing the Fergusons' tax liabilities; and that Mrs. Ferguson had the opportunity to litigate this case before the Court and did so by filing numerous documents in the record.  Under such circumstances, the Court can find no "surprise" warranting relief under Rule 60(b)(1).

Additionally, the Court is of the opinion that no relief should be available to Mrs. Ferguson under the "excusable neglect" prong of Rule 60(b)(1).  As discussed supra, the determination of whether a party's neglect is excusable for purposes of Rule 60(b)(1) is an equitable one turning on all the relevant circumstances surrounding a party's omission.  See Pioneer, 507 U.S. at 395; Cheney, 71 F.3d at 850.[21]  In making its determination, the Court must weigh "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Cheney, 71 F.3d at 850 (quoting Pioneer, 507 U.S. at 395).  Applying these factors, the Court finds that the circumstances weigh entirely in favor of Plaintiff and against Mrs. Ferguson and, therefore against a finding of excusable neglect.

---

[21]"[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."  Pioneer, 507 U.S. at 394; see also Davenport, 668 F.3d at 1324; Cheney, 71 F.3d at 850.  A list of Mrs. Ferguson's failures to satisfy Court deadlines would include her failure to appear at the Court scheduled mediation conference prior to the deadline set forth in the Case Management and Scheduling Order (see Doc. Nos. 30, 49), her failure to file discovery motions prior to the close of discovery (see Doc. No. 56 at 4), and her failure to respond to Plaintiff's Motion for Summary Judgment (see Doc. Nos. 50, 56, 58).  Mrs. Ferguson does not specify which of these or other failures to comply with Court deadlines she attributes to excusable neglect.  However, as discussed infra, after reviewing and analyzing Mrs. Ferguson's overall pattern of deliberate conduct and the circumstances of this case, the Court does not identify any excusable neglect on the part of Mrs. Ferguson throughout this litigation.

The Court's analysis and findings with respect to the first factor, i.e. the danger of prejudice to Plaintiff, are identical for Mr. Ferguson and Mrs. Ferguson.  Thus, for the reasons articulated above with regard to the Michael Motion, the Court determines that there is a danger of real prejudice to Plaintiff should Mrs. Ferguson be permitted to defend against Plaintiff's claims for a second time.  Accordingly, the Court finds that this factor weighs against Mrs. Ferguson and in favor of Plaintiff.

As to the second factor, the effect on the judicial proceedings, the Court determines that it too weighs heavily against Mrs. Ferguson.  As discussed in greater detail above, this litigation has spanned a substantial period of time and has been repeatedly slowed by lengthy delays attributable to Mrs. Ferguson. Yet, despite Mrs. Ferguson's unbecoming conduct throughout the litigation, this case has run a procedurally proper course resulting in the entry of the Judgment in favor of Plaintiff and against Mrs. Ferguson.  To permit Mrs. Ferguson to re-litigate and defend this case at this late time because she is displeased with the outcome would unnecessarily prolong this matter, condone her conduct, tax scarce judicial resources, undermine order and predictability in the judicial process, and subvert the finality of the Summary Judgment Order, the Judgment, and the Decree.  The Court finds that such results would both significantly delay and negatively impact these and future judicial proceedings.  Accordingly, this second factor weighs heavily against a finding of excusable neglect.

The third factor, the reason for delay and whether it was within Mrs. Ferguson's reasonable control, also weighs heavily against Mrs. Ferguson.  Mrs. Ferguson presents no meritorious reason in either the Katherine Motion or the Katherine Affidavit for her repeated

failures to meet Court deadlines, advise Mr. Ferguson of the proceedings, or otherwise defend this case properly.[22]  See generally Katherine Affidavit.  Moreover, Mrs. Ferguson is proceeding pro se, and therefore cannot attribute any of her haphazard litigation strategies or failures to meet Court deadlines to underperforming counsel.  Thus, the Court finds that Mrs. Ferguson has advanced no satisfactory reasons for the numerous delays occasioned by her litigation decisions and the strategies she implemented.  Accordingly, the Court concludes that this factor does not support a finding of excusable neglect.

Finally, the Court turns to the fourth factor, whether Mrs. Ferguson has acted in good faith.  The Court need look no further than Mrs. Ferguson's own declarations to conclude that this factor, like the others, weighs against Mrs. Ferguson and in favor of Plaintiff.  In the Katherine Motion, Mrs. Ferguson asserts that she "committed misrepresentation by misleading the Court and government counsel, and by omission by failing to disclose to [her] husband . . . that he had Internal Revenue Service problems or that this case was pending." Katherine Motion at 1.  These assertions of patent fraud and misconduct are echoed in the Katherine Affidavit wherein Mrs. Ferguson declares that she filed fraudulent tax returns and forged Mr. Ferguson's signature on multiple court filings.  See Katherine Affidavit at 3. Because Mrs. Ferguson's actions and admissions affirmatively reflect her bad faith, the Court determines that this factor weighs heavily in Plaintiff's favor and against a finding of excusable neglect under Rule 60(b)(1).  Thus, upon review, the Court concludes that the circumstances of this case as well as the four Pioneer factors weigh in favor of Plaintiff and

---

[22]The Court finds that Mrs. Ferguson's alleged desire to avoid inconveniencing or burdening her husband is not, under the circumstances of this case, a satisfactory justification for neglecting Court orders and deadlines.  See Katherine Affidavit at 2.

against Mrs. Ferguson and, therefore, against a finding of excusable neglect under Rule 60(b)(1).  Accordingly, the Court determines that the Katherine Motion is due to be denied to the extent that she seeks relief under the excusable neglect prong of Rule 60(b)(1).

In the Katherine Motion, Mrs. Ferguson requests relief from the Summary Judgment Order, the Judgment, and the Decree under Rule 60(b).  Specifically, Mrs. Ferguson seeks relief pursuant to Rule 60(b)(1) on grounds of "surprise" and "excusable neglect." Additionally, Mrs. Ferguson prays for relief under Rule 60(b)(3) because of fraud, misrepresentation, or misconduct.  However, after reviewing the record, the totality of the circumstances and weighing the relevant factors, the Court finds no basis to grant Mrs. Ferguson relief under either Rule 60(b)(1) or Rule 60(b)(3).  As the Court finds no grounds for granting Mrs. Ferguson the relief she seeks, the Court determines that the Katherine Motion, like the Michael Motion, is due to be denied.

## IV.    Conclusion

In their respective Motions, both Mr. and Mrs. Ferguson seek to set aside the Summary Judgment Order, the Judgment, and the Decree pursuant to Rule 60(b)(1) under theories of surprise and excusable neglect.  Additionally, both Mr. and Mrs. Ferguson pray for relief under Rule 60(b)(3) because of fraud, misrepresentation, or misconduct.  Upon review, the Court concludes that neither Mr. nor Mrs. Ferguson has demonstrated surprise or excusable neglect warranting relief under Rule 60(b)(1).  Moreover, in the absence of allegations of fraud, misrepresentation, or misconduct on the part of Plaintiff, the Court does not identify a basis for relief pursuant to Rule 60(b)(3).  Accordingly, the Court concludes that neither Mr. nor Mrs. Ferguson has advanced any reason which convinces the Court that

setting aside the Summary Judgment Order, the Judgment, and the Decree is appropriate or otherwise necessary to avoid injustice.   Therefore, upon consideration, it is hereby **ORDERED**:

    **1.**   Defendant Michael D. Ferguson's Amended Verified Motion to Set Aside Final Summary Judgment of Foreclosure, Final Judgment, and Decree of Foreclosure and Order of Sale (Doc. No. 86) is **DENIED**.

    **2.**   Defendant Katherine S. Ferguson's Amended Verified Motion to Set Aside Final Summary Judgment of Foreclosure, Final Judgment, and Decree of Foreclosure and Order of Sale (Doc. No. 87) is **DENIED**.

    **3.**   Defendant's Motion to Stay Proceedings (Doc. No. 93) is **DENIED as moot**.[23]

    **DONE AND ORDERED** in Jacksonville, Florida, this 13th day of January, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

lc14

Copies to:

Pro se parties

Counsel of Record

---

[23]In the Motion to Stay, Mr. Ferguson requests that pursuant to Rule 62(b)(4) the Court "stay any foreclosure activity including, but not limited to, turnover of the property to a receiver for sale, notice of sale, and a sale through either a judicial sale or through a Special Master" pending resolution of the Michael Motion and Katherine Motion. See Motion to Stay at 1, 4.  Because the Court has herein resolved both the Michael Motion and the Katherine Motion, the Motion to Stay is rendered moot.